JB



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NORTHERN DIVISION

NO. 2:10-CR-8-1 (3)
NO. 2:10-CR-8-2 (3)
NO. 2:10-CR-8-3 (3)
NO. 2:10-CR-8-4 (3)
NO. 2:10-CR-8-5 (3)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| GARY JACKSON | ) | INDICTMENT |
| WILLIAM WHEELER MATHEWS, JR. | ) | |
| ANDREW HOWELL | ) | |
| RONALD SLEZAK | ) | |
| ANA BUNDY | ) | |

The Grand Jury charges:

### Introduction

1.    Defendant GARY JACKSON was President of Blackwater Worldwide, Inc., now called Xe Services (Blackwater/Xe).

2.    Defendant WILLIAM WHEELER MATHEWS, JR., was an attorney with Blackwater/Xe who also held the title of Executive Vice President.

3.    Defendant ANDREW HOWELL was an attorney with Blackwater/Xe who held the title of General Counsel.

4.    Defendant RONALD SLEZAK had been hired by Blackwater/Xe to be responsible for all documentation and matters related to Blackwater/Xe's status as a federally licensed firearms dealer.

1

5. Defendant ANA BUNDY came to hold several administrative positions within Blackwater/Xe's Moyock, North Carolina, operations. These included the position of Vice President of Logistics and Procurement. Her responsibilities at pertinent times included oversight of the armory as well as the packaging and shipping of weapons to overseas locations.

6. Blackwater/Xe was primarily a defense contractor headquartered in Moyock, North Carolina. It contracted with a variety of federal and other agencies to provide weapons training as well as other forms of training with both military and law enforcement application. In addition to its training contracts, Blackwater/Xe had multi-million dollar contracts with the federal Government to provide security services in both Iraq and Afghanistan. These contracts required it to provide armed escorts to United States Diplomatic personnel and others as well as static guard services for facilities of interest to the United States.

7. Blackwater/Xe's property in Moyock, North Carolina, covered approximately 7,000 acres and, in addition to offices, an airstrip, an armory, and classrooms, it also has extensive firing ranges, a course for teaching defensive driving and other facilities.

8. Throughout the charged time frame Blackwater/Xe was a Federally Licensed Firearms Dealer (FFL).

9. Federally Licensed Firearms Dealers are required by law

2

to maintain truthful, accurate and detailed records relevant to the acquisition and disposition of all firearms which come within their control. Federally Licensed Firearms Dealers are also subject to inspection to ensure their compliance with these record keeping requirements. Such inspections are not automatic but can be triggered by a variety of events.

10. Fully automatic weapons and rifles with barrels less than a certain length, because of their inherent dangerousness, are subject to enhanced levels of regulation. Only certain classes of FFLs are permitted to have in their inventory such weapons and are subject to both quantity restrictions and registration requirements. These requirements are set out principally in Title 26, United States Code, Sections 5841-5849. Among other provisions, these sections establish that even a qualifying FFL is limited to two samples of any model machine gun and must register both of them as required by statute. Qualified FFLs may be permitted to possess larger numbers of Short Barrel Rifles (SBRs) but each must be registered. Short Barrel Rifles are defined as including any rifle with a barrel length of less than 16 inches.

11. Qualified law enforcement agencies, subject to certain requirements, are permitted to have in their inventories fully automatic weapons. However, they must register these weapons as required by statute and are not permitted to transfer them except under limited circumstances also specified by statute. They have

3

no authority to transfer more than two automatic weapons of the same make and model even to a qualifying FFL, and even then, must register such a transfer before delivering the weapons.

12.    Blackwater/Xe's profits were to a large extent derived from contracts with the Federal Government both to provide training, chiefly at their Moyock facility, and protective services in overseas locations. Some of the contracts involved training Government personnel on the firing ranges of Blackwater/Xe's Moyock facility.

13.    Access to automatic weapons was believed to increase Blackwater/Xe's ability to successfully bid on the training contracts.

14.    Access to SBRs was perceived to be a means of enhancing their ability to perform under the protective services contracts because the rifles were more maneuverable in confined spaces including motor vehicles, airplanes and buildings.

15.    Maintaining its status as an FFL was integral to Blackwater/Xe's ability to successfully bid on and perform much of its business.

16.    In addition to its contractual relationship with the Federal Government, Blackwater/Xe was aggressively seeking to expand its business into various other fields including contracts for the provision of protective services on behalf of foreign Government personnel, the training of foreign nationals to provide

4

such services for their own countries, and the construction of training facilities in such foreign countries. One of the foreign countries with whom Blackwater/Xe hoped to contract to provide such services was the Kingdom of Jordan.

17.   AK47s are inexpensive, primitive military rifles primarily manufactured in the People's Republic of China and former Soviet dominated countries, including Romania. They are generally but not exclusively manufactured as automatics. In their non-automatic form, they are not subject to enhanced regulation and can lawfully be imported into and sold to the general population in the United States. In their automatic form, they are subject to the enhanced regulation applicable to all other automatic weapons. They have little or no application for law enforcement agencies within the United States.

18.   Witness #1 was a senior officer of the Camden County Sheriff's Department, the offices of which were located relatively close to Blackwater/Xe's Moyock facility.

19.   Witness #2 was employed by Blackwater/Xe to manage its physical plant.

20.   Three individuals known to the Grand Jury and referred to herein as Armorer One, Two, and Three worked principally in Blackwater/Xe's armory as gunsmiths. The armorers were responsible for repairing and maintaining Blackwater/Xe's stock of firearms.

5

## Count One

Paragraphs 1 - 20 of the Introduction above are incorporated herein by reference.

At some date prior to January, 2003, the exact date being unknown to the Grand Jury, and continuing thereafter until on or about November 30, 2009, in the Eastern District of North Carolina and elsewhere, GARY JACKSON, WILLIAM WHEELER MATHEWS, JR., ANDREW HOWELL, RONALD SLEZAK, and ANA BUNDY, defendants herein, and others both known and unknown, did knowingly combine, conspire, confederate and agree to commit offenses against the United States, that is:

a. To knowingly make false statements and representations with respect to information required by Chapter 44 of Title 18, United States Code, to be kept in the records of a federally licensed firearms dealer, in violation of Title 18, United States Code, Section 924(a)(1)(A);

b To knowingly and illegally possess machine guns, in violation of Title 18, United States Code, Section 922(o)(1);

c. To knowingly receive and possess firearms which were not registered to them in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, section 5861(d);

6

d.    To corruptly persuade another person and to engage in misleading conduct toward another person with intent to alter and conceal an object with the intent to impair the object's integrity or availability for use in an official proceeding, in violation of Title 18, United States Code, Section 1512(b)(2)(B);

e.    To knowingly falsify and make a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or in relation to or contemplation of any such matter or case, in violation of Title 18, United States Code, Section 1519.

## Object of the Conspiracy

The object of the conspiracy was to gain an advantage over competitors in the defense contracting field and thereby profit from obtaining and keeping Government contracts.

## Manner and Means

1.    The conspiracy was carried out by the defendants devising and executing a means of circumventing the law as it relates to the possession and disposition of firearms.

2.    One such means involved arranging what essentially constituted "straw purchases," the illegal purchase of a firearm by one person for another, of both 17 Bushmaster M4s and 17 Romanian manufactured AK 47 machine guns. This means involved

7

enticing a small local Sheriff's Office to pose as the purchaser of both the M4s and the AK47s. The Sheriff's office provided blank Sheriff's Office letterhead stationary to Blackwater/Xe who then used the letterhead stationary to prepare letters ordering the weapons from the manufacturer and importer. Blackwater/Xe then paid for the weapons. When the weapons arrived at the Sheriff's Office, they were immediately delivered to Blackwater/Xe's Moyock facility where they were locked in Blackwater/Xe's armory to which the Sheriff's Office had no direct access. At the time the weapons were acquired, the entire force of the Sheriff's Office consisted of less than a dozen full-time uniformed deputies. Blackwater/Xe then used the weapons in the performance of obligations incurred by their Government training contracts.

3. Another means consisted of Blackwater/Xe's efforts to gain favor with the Government of the Kingdom of Jordan. When the King of Jordan came to examine Blackwater/Xe's training facility at Moyock, North Carolina, the defendants arranged to present the King and/or his entourage with several firearms as gifts. When the defendants subsequently realized they were unable to account for the disposition of the firearms, they falsified four separate Alcohol, Tobacco, and Firearms (ATF) Form 4473s for submission to federal authorities. The defendants falsely completed the forms to give the appearance that the weapons had been purchased by them as individuals.

8

4. Another means emanated from the defendant's desire to provide the "independent contractors" hired by Blackwater/Xe to provide the overseas security services called for in their contracts with the Government with short barrel rifles (SBRs). The defendants purchased some 227 short barrels compatible with M4 rifles and then had their own armorers install the short barrels on what had been long barrel rifles. They did this without registering these weapons as required by law. In an effort to shield themselves from the charge of exporting regulated weapons, the defendants detached the short barrels from the receivers they had already been mated with before shipping them overseas. However, the short barrels and their receivers were shipped at the same time and packaged in a manner permitting them to easily be re-assembled.

5. When the SBRs began reappearing in the United States, at which point the defendants were well aware of the federal investigation which led to these charges, the defendants ordered the rifles converted back to long barrels and moved to a different storage facility for the purpose of hindering the investigation. Specifically, the defendants moved a quantity of SBRs from one location at the Moyock facility, which they knew was about to be the subject of an inspection by ATF, to a different part of the facility. After moving them, and despite their knowledge that the Government was pressing to locate the SBRs, they converted them to

long barrels and returned only the long barrel guns to the location they knew was going to be inspected.

6. The effort to obstruct the on-going investigation was initiated with an order directing that the SBRs be both moved and altered. After this directive was issued and was carried out, the defendants attempted to shield themselves from their conduct by sending an email with a proposed letter to the new President of Blackwater/Xe. The email attempted to rationalize the obstruction by analogizing Blackwater/Xe's situation to that of an industrial polluter who could not be expected to continue polluting until discovered. The letter attached to the email which the defendants intended to be back-dated and signed by the new President, would have given the false impression that he, the new President, and not the defendants had ordered the movement and alteration of the weapons. The new President refused to sign the letter and directed Defendant Howell to recuse himself from this matter.

<u>Overt Acts</u>

In furtherance of the conspiracy and in order to effect the object thereof, the defendants did commit, among others, the following overt acts:

**Short Barrel Rifles** (SBRs)

1. During the time frame of 2003-2005 at the Moyock, North Carolina, facility, armorer #1 and armorer #2 did, at the direction of defendant GARY JACKSON and others, construct approximately 125 SBRs.

10

2. On or about June 25, 2004, defendant GARY JACKSON made payment for one short barrel compatible with Bushmaster M4 rifles.

3. On or about February 17, 2004, armorer #1 ordered 90 short barrels compatible with Bushmaster M4 rifles.

4. During April of 2004, armorer # 1, traveled from the Moyock facility in North Carolina, to Iraq with approximately 50 short barrels which he then installed on M4 rifles.

5. On or about May 21, 2004, defendant GARY JACKSON made payment for three short barrels compatible with Bushmaster M4 rifles.

6. On or about June 25, 2004, defendant GARY JACKSON made payment for one short barrel compatible with Bushmaster M4 rifles.

7. On or about June 25, 2004, defendant GARY JACKSON made payment for 64 short barrels compatible with Bushmaster M4 rifles.

8. On or about July, 2005, defendant GARY JACKSON directed armorer #1 to make enquiry of Bushmaster as to the purchase of "jigs", sometimes referred to as "fixtures" with which it is possible to modify semi-automatic M4s to fully automatic.

9. In the latter months of 2005 and into the early months of 2006, the construction of SBRs was continued at the Moyock facility in North Carolina by armorer #3 of Blackwater/XE.

10. On or about November 16, 2006, defendant GARY JACKSON made payment for 10 short barrels compatible with Bushmaster M4 rifles.

11. On or about August 17, 2007, defendant GARY JACKSON made

11

payment for two short barrels compatible with Bushmaster M4 rifles.

## Camden County Machine Guns

1. On or about January 29, 2003, defendant GARY JACKSON took possession of two Steyr machine guns on behalf of Blackwater/Xe.

2. During the month of February, 2005, Witness #1, completed a terrorist-target assessment relative to Camden County, North Carolina, as a means of justifying the straw purchase of automatic weapons, ostensibly by the Camden County Sheriff's Department but intended for use by Blackwater/Xe.

3. On or about February 24, 2005, defendant WILLIAM WHEELER MATHEWS, JR., and Witness #1, caused a letter on Camden County Sheriff's Department letterhead to be sent to Century Arms, Inc., for the purchase of 17 automatic AK 47s.

4. On or about February 24, 2005, defendant WILLIAM WHEELER MATHEWS, JR., and Witness #1, caused a letter on Camden County Sheriff's Department letterhead to be sent to Bushmaster Firearms International, LLC, for the purchase of 17 automatic M4s.

5. On or about May 5, 2005, Witness #1 issued an Exemption Certificate from the Camden County Sheriff's Department to Bushmaster for the non-tax transfer of M4s destined for Blackwater/Xe.

6. On or about June 20, 2005, defendant GARY JACKSON and Witness #1 signed a "Memorandum of Agreement" between the Camden County Sheriff's Department and Blackwater/Xe memorializing the straw purchase agreement which permitted Blackwater/Xe to purchase

12

and possess the Bushmaster automatic M4s under the pretense that the weapons were being purchased by the Sheriff's Office.

7.  On or about June 20, 2005, defendant GARY JACKSON and Witness #1 signed a "Memorandum of Agreement" between the Camden County Sheriff's Department and Blackwater/Xe memorializing the straw purchase agreement which permitted Blackwater/Xe to purchase and possess the Romanian automatic AK47s under the pretense that the weapons were being purchased by the Sheriff's Office.

8.  In the latter part of 2005, or the early portion of 2006, defendant ANA BUNDY was asked by a Blackwater/Xe employee, who had recently been given the responsibilities of "Manager of Firearms Control", about the contents of a specific gun safe located within the armory.  The container held the automatic weapons obtained through the straw purchase with the local Sheriff's Office. Despite the fact that the employee was then responsible for the firearms, BUNDY told him it was none of his business what was in the gun safe.

## King of Jordan Firearms

1.  On or about March 19, 2005, five firearms, specifically one Bushmaster M4 rifle, three Glock handguns, and one Remington shotgun were presented to the King of Jordan and/or his entourage at Blackwater/Xe's facility in Moyock, North Carolina, as arranged by defendant GARY JACKSON and others.

2.  On or June 8, 2005, Witness #2 falsely completed an ATF Form 4473 representing himself as the purchaser of a Glock 19

13

handgun which had previously been gifted to the King of Jordan and/or his entourage.

3.   On or about June 20, 2005, defendant RONALD SLEZAK and Witness #2, falsely completed an ATF Form 4473 which represented Witness #2 as the purchaser of a Glock 19 serial #GGA645, handgun which had in truth, as they well knew, previously been gifted to the King of Jordan and/or his entourage.

4.   On or about June 20, 2005, defendant RONALD SLEZAK and Witness #2, falsely completed an ATF Form 4473 which represented SLEZAK as the purchaser of a Glock 17 handgun which had in truth as they well knew previously been gifted to the King of Jordan and/or his entourage.

5.   On or about August 16, 2005, defendant RONALD SLEZAK and Witness #2, falsely completed an ATF Form 4473 which represented Witness #2 as the purchaser of a Glock 19 handgun, serial #GGA647, which had in truth, as they well knew, previously been gifted to the King of Jordan and/or his entourage.

6.   On or about August 19, 2005, defendants GARY JACKSON and RONALD SLEZAK falsely completed an ATF Form 4473 which represented JACKSON as the purchaser of a Bushmaster M4 rifle and a Remington shotgun both of which had in truth, as they well knew, previously been gifted to the King of Jordan and/or his entourage.

7.   On or about August 22, 2005, defendant RONALD SLEZAK escorted an ATF inspection team to Blackwater/Xe's FFL records which he well knew contained falsified ATF Form 4473s.

14

## Obstruction of Justice

1. On or about March 4, 2009, defendant ANDREW HOWELL told a Blackwater/Xe employee who was then responsible for compliance with federal firearms regulations that informing federal authorities of the existence of approximately 33 unregistered short-barreled rifles then being held at the Moyock facility was "not an option".

2. On or about March 26, 2009, at the direction of defendants ANDREW HOWELL and ANA BUNDY, and with the objective of avoiding detection in an expected ATF inspection, approximately 14 short-barreled rifles owned by Blackwater/Xe were moved from one armory located at the Moyock facility to a different armory at that facility.

3. On or about March 26, 2009, at the Moyock facility and at the direction of defendants ANDREW HOWELL and ANA BUNDY, with the objective of frustrating a federal investigation, approximately 14 unregistered short-barrel M4s were converted to long-barrels.

4. On or about March 27, 2009, after the alteration of the short barrel rifles directed by ANDREW HOWELL and defendant ANA BUNDY had been completed, defendant HOWELL sent an e-mail to the current President of Blackwater/Xe urging the President to sign an attached letter. The letter, which HOWELL intended to be back-dated, would have given the false impression that the President of Blackwater/Xe had directed the alteration of the short-barrel rifles.

All in violation of Title 18, United States Code, Section 371.

15

## Count Two

On or about June 8, 2005, in the Eastern District of North Carolina and elsewhere, GARY JACKSON, defendant herein, and Witness #2, knowingly made a false statement and representation with respect to information required by Chapter 44 of Title 18, United States Code, to be kept in the records of a federally licensed firearms dealer, that is, they falsely completed an ATF Form 4473 representing Witness #2 as the purchaser of a Glock 19 handgun serial #GGA645 which firearm, as they well knew, had actually been gifted to the King of Jordan and/or his entourage, and did aid and abet in doing so, in violation of Title 18, United States Code, Section 924(a)(1)(A) and 2.

## Count Three

On or about June 20, 2005, in the Eastern District of North Carolina and elsewhere, GARY JACKSON and RONALD SLEZAK, defendants herein, and Witness #2, knowingly made a false statement and representation with respect to information required by Chapter 44 of Title 18, United States Code, to be kept in the records of a federally licensed firearms dealer, that is, they falsely completed an ATF Form 4473 which represented Witness #2 as the purchaser of a Glock 19 handgun, serial #GGA645, which had in truth, as they well knew, been gifted to the King of Jordan and/or his entourage, and did aid and abet in doing so in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

## Count Four

On or about June 20, 2005, in the Eastern District of North Carolina and elsewhere, defendants GARY JACKSON and RONALD SLEZAK, defendants herein, and Witness #2, knowingly made a false statement and representation with respect to information required by Chapter 44 of Title 18, United States Code, to be kept in the records of a federally licensed firearms dealer, that is, they falsely completed an ATF Form 4473 which represented defendant RONALD SLEZAK as the purchaser of a Glock 17 handgun which had in truth, as they well knew, been gifted to the King of Jordan and/or his entourage, and did aid and abet in doing so, in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

## Count Five

On or about August 16, 2005, in the Eastern District of North Carolina and elsewhere, defendants GARY JACKSON and RONALD SLEZAK, defendants herein, and Witness #2, knowingly made a false statement and representation with respect to information required by Chapter 44 of Title 18, United States Code, to be kept in the records of a federally licensed firearms dealer, that is, they falsely completed an ATF Form 4473 which represented Witness #2 as the purchaser of a Glock 19 handgun, serial #GGA647, which had in truth, as they well knew, been gifted to the King of Jordan and/or his entourage, and did aid and abet in doing so, in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

## Count Six

On or about August 19, 2005, in the Eastern District of North

Carolina and elsewhere, defendants GARY JACKSON and RONALD SLEZAK, knowingly made a false statement and representation with respect to information required by Chapter 44 of Title 18, United States Code, to be kept in the records of a federally licensed firearms dealer, that is, they falsely completed an ATF Form 4473 which represented GARY JACKSON as the purchaser of a Bushmaster M4 rifle and a Remington shotgun both of which had in truth, as they well knew, been gifted to the King of Jordan and/or his entourage, and did aid and abet in doing so, in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

## Count Seven

Beginning on or about January 29, 2003, and continuing to on or about July 3, 2008, in the Eastern District of North Carolina and elsewhere defendant GARY JACKSON and others, both known and unknown to the Grand Jury, did knowingly and illegally possess machine guns, that is, he possessed two Steyr machine guns on behalf of Blackwater/Xe, and did aid and abet others in doing so, in violation of Title 18, United States Code, Section 922(o)(1) and 2.

## Count Eight

Beginning on or about, June 20, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere defendants GARY JACKSON, WILLIAM WHEELER MATHEWS, JR., and others, both known and unknown to the Grand Jury, did knowingly and illegally possess machine guns, that is, approximately 17 AK47s, held in the armory of Blackwater/Xe, and did aid and abet in doing

so, in violation of Title 18, United States Code, Section 922(o)(1) and 2.

## Count Nine

Beginning on or about, June 10, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere, defendants GARY JACKSON, WILLIAM WHEELER MATHEWS, JR., and others, both known and unknown to the Grand Jury, did knowingly and illegally possess machine guns, that is, approximately 17 Bushmaster M4s held in the armory of Blackwater/Xe, and did aid and abet in doing so, in violation of Title 18, United States Code, Section 922(o)(1) and 2.

## Count Ten

Beginning on or about January 29, 2003, and continuing to July 3, 2008, in the Eastern District of North Carolina and elsewhere, defendant GARY JACKSON, and others, both known and unknown to the Grand Jury, did knowingly and illegally receive and possess a firearm not registered to him in the National Firearms and Registration and Transfer Record, that is, two Steyr machine guns, held in the armory of Blackwater/Xe, and did aid and abet in doing so, in violation of Title 26, United States Code, Section 5861 (d) and Title 18, United States Code, Section 2.

## Count Eleven

Beginning on or about, June 20, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere, defendants GARY JACKSON, WILLIAM WHEELER MATHEWS, JR., and others, both known and unknown to the Grand Jury, did knowingly and illegally receive and possess a firearm not registered to either of the defendants in the National Firearms and Registration and Transfer Record, that is, approximately 17 AK47 machine guns, held in the armory of Blackwater/Xe, and did aid and abet in doing so, in violation of Title 26, United States Code, Section 5861 (d) and Title 18, United States Code, Section 2.

## Count Twelve

Beginning on or about June 10, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere, defendants GARY JACKSON, WILLIAM WHEELER MATHEWS, JR., and others, both known and unknown to the Grand Jury, did knowingly and illegally receive and possess a firearm not registered to either of the defendants in the National Firearms and Registration and Transfer Record, that is, approximately 17 Bushmaster M4 machine guns, held in the armory of Blackwater/Xe, and did aid and abet in doing so, in violation of Title 26, United States Code, Section 5861(d) and Title 18, United States Code, Section 2.

## Count Thirteen

Beginning on or about, June 25, 2004, and continuing to August 5, 2009, in the Eastern District of North Carolina and elsewhere, defendants GARY JACKSON and others, both known and unknown to the

Grand Jury, did knowingly and illegally receive and possess a firearm not registered to him in the National Firearms and Registration and Transfer Record, that is, a number of Bushmaster M4 rifles which had been altered to reduce their barrel length to less than 16 inches manufactured and held in an armory of Blackwater/Xe at its Moyock, North Carolina, facility, and did aid and abet in doing so, in violation of Title 26, United States Code, Section 5861(d) and Title 18, United States Code, Section 2.

<u>Count Fourteen</u>

On or about March 26, 2009, in the Eastern District of North Carolina and elsewhere, defendants ANDREW HOWELL and ANA BUNDY, did knowingly and corruptly persuade another person, and did attempt to do so, with the intent to cause and induce a person to alter and conceal an object for the purpose of impairing the object's integrity and availability for use in an official proceeding, that is, the defendants did instruct other employees of Blackwater/Xe to move a quantity of Bushmaster M4 rifles with barrels less than 16 inches in length, from one location in Blackwater/Xe's Moyock, North Carolina, facility to another location, and did instruct such employees to remove the short barrels and replace them with long barrels, and did aid and abet in doing so, in violation of Title 18, United States Code, Section 1512(b)(2)(B) and 2.

## Count Fifteen

On or about March 27, 2009, in the Eastern District of North Carolina and elsewhere, the defendant ANDREW HOWELL, knowingly and with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States and in relation to and contemplation of any such matter and case, did falsify and make a false entry in a record, document and tangible object, that is, did prepare and present a letter, intended to be back-dated, which the defendant attached to and explained in an e-mail, for signature by the President of Blackwater/Xe, which letter falsely stated that the President had ordered the movement and alteration of a quantity of Bushmaster M4 rifles, which as the defendant well knew, the defendant himself, acting in concert with another, had previously instructed other employees to move and alter, and did aid and abet in doing so, all in violation of Title 18, United States Code, Sections 1519 and 2.

A TRUE BILL

_____
FOREPERSON

DATE: 4-15-2010

GEORGE E. B. HOLDING
United States Attorney

JOHN S. BOWLER
Assistant United States Attorney
Criminal Division

22