<pre>
 1              UNITED STATES DISTRICT COURT

 2            EASTERN DISTRICT OF NORTH CAROLINA

 3  _____

 4

 5  United States of America,

 6              Plaintiff,        NO. 2:10-CR-8-FL

 7  v.                            ARRAIGNMENT, PLEA AND SENTENCE

 8  Gary Jackson,                 RALEIGH, NORTH CAROLINA
    William Mathews, Jr.,and      February 21, 2013
 9  Ronald Slezak,

10              Defendants.

11  _____
                          *CORRECTED*
12              VERBATIM REPORT OF PROCEEDINGS
            BEFORE THE HONORABLE LOUISE W. FLANAGAN
13               UNITED STATES DISTRICT JUDGE
    _____
14

15  APPEARANCES:

16  For the Plaintiff:

17  John S. Bowler
    Eric D. Goulian
18  Assistant United States Attorneys
    310 New Bern Avenue, Suite 800
19  Raleigh, NC 27601

20  For Defendant Gary Jackson:

21  Kenneth Bell
    McGuire Woods, LLP
22  100 North Tryon Street, Suite 2900
    Bank of America Corporate Center
23  Charlotte, NC  28202

24  Leslie Stafford Bowers
    Gentry Locke Rakes & Moore, LLP
25  10 Franklin Road SE, Suite 800
    Roanoke, VA  24011
</pre>

```
1   Darren W. Stanhouse
    McGuire Woods, LLP
2   434 Fayetteville Street, Suite 2600
    Raleigh, NC 27601
3

4   For Defendant William Wheeler Mathews, Jr.:

5   James R. Sweeney
    Barnes & Thornburg, LLP
6   11 South Meridian Street
    Indianapolis, IN  46204
7

8   For Defendant Ronald Slezak: (Not Present)

9   Brian L. Whisler
    Baker & McKenzie
10  815 Connecticut Ave., NW, FL 9
    Washington, DC  20006
11
    Pat Woodard
12  1783 Forest Drive
    Annapolis, MD  21401
13

14  For U.S. Probation:

15  John Wasco

16

17

18

19

20  Reported by:                Denae Hovland, RPR, RMR, CRR
                                Federal Court Reporter
21                              denae_hovland@nced.uscourts.gov

22

23

24  Proceedings recorded by mechanical stenography, transcript

25  produced by Reporter on computer.
```

 1          THE COURT:  Good afternoon.

 2          MR. BOWLER:  Good afternoon, Your Honor.

 3          THE COURT:  Would the clerk call the case, and then

 4   starting first with the defendants, we'll invite counsel to make

 5   their showing on the record and that of their client.  Ms. Tripp?

 6          THE CLERK:  The court calls the following cases for

 7   arraignment and change of plea hearing.  United States of America

 8   vs. Gary Jackson.

 9          THE COURT:  Is Mr. Jackson here?

10          MR. BELL:  He is, Your Honor.  He's seated next to me,

11   Kenneth Bell, on behalf of Mr. Jackson, along with Les Bowers and

12   Darren Stanhouse.

13          THE COURT:  Very good.  Good afternoon.

14          THE CLERK:  United States of America vs. William

15   Wheeler Mathews, Jr.

16          MR. SWEENEY:  Jim Sweeney for Mr. Mathews, Your Honor,

17   and he's present.

18          THE COURT:  All right.  Thank you.

19          THE CLERK:  United States of America vs. Ronald Slezak.

20          THE COURT:  Is there any showing on behalf of

21   Mr. Slezak?  Mr. Bowler?

22          MR. BELL:  Your Honor, yesterday I spoke with

23   Mr. Slezak's attorney, Brian Whisler, and he did intend to be

24   here.  I think he thought, as did we, frankly, that it was at

25   2:00 o'clock.  That's what we had been told.

1    THE COURT:  Well, let's take up in his absence the case

2    of Mr. Slezak, at least to establish the procedural posture.  I

3    have an unsigned and undated motion to dismiss that comes to me

4    by courtesy of the government through the case manager to alert

5    the court as to the sudden change in the posture of this case.  I

6    assume there is a motion concerning Mr. Slezak?

7    MR. BOWLER:  Your Honor, I should start with a

8    foundational matter.  We believe we're required to inform the

9    court that the plea offers in this case were co-dependent, in the

10   vernacular wired.  The offer was to a group, that everyone takes

11   it or no one gets it, essentially.  That was modified as the

12   negotiations went along, but we did offer as part of the plea to

13   these two individuals to dismiss against Mr. Slezak should both

14   of them accept the plea offers.  So our anticipation was to enter

15   those pleas and then we would follow through with our motion to

16   dismiss.

17   THE COURT:  Well, I'm curious, was there any reach in

18   these negotiations to the defendants that I dismissed as to the

19   bringing of any claims in the future against them?

20   MR. BOWLER:  No, there is — well, there were

21   discussions in that regard, Your Honor, but there is no

22   contractual arrangements between those parties and the government

23   at this time.

24   THE COURT:  Okay.  So you have reached a plea

25   agreement, Mr. Bell, concerning Mr. Jackson?

1          MR. BELL:  Yes, Your Honor, we've agreed to plead

2    guilty to a criminal information, which I assume hasn't been

3    filed yet, to the misdemeanor charge under 922(m) of Title 18.

4          THE COURT:  I have reviewed that in the form that it

5    was put forward for the court's information.

6       And on behalf of Mr. Mathews?

7          MR. SWEENEY:  Yes, Your Honor, also under 922(m).

8          THE COURT:  It's identical, isn't it —

9          MR. SWEENEY:  Yes, ma'am.

10          THE COURT:  — with respect to references to what

11   counts would be dismissed, reflecting the different counts?

12          MR. SWEENEY:  That's correct, Your Honor.

13          THE COURT:  Okay.  Would Mr. Jackson and Mr. Mathews

14   please stand and raise your right hand?

15   GARY JACKSON, having been duly affirmed, testified as follows:

16   WILLIAM WHEELER MATHEWS, JR., having been duly affirmed,

17   testified as follows:

18          THE COURT:  The court must make certain that the

19   defendants understand the rights that they have, including the

20   right, among other things, to a trial, to be represented by an

21   attorney at every course of this proceeding, to call witnesses

22   and to present evidence.

23       The court must also assure that the defendants understand

24   the nature of the charges that you face, the possible punishment,

25   and moreover that no one, if it is your intention to plead guilty

1  to the crime as charged in the information, that no one has

2  threatened or forced you to do that or made any promises other

3  than what's presented in the plea agreement and to the court.

4      So going forward, I would take note first and foremost that

5  you previously were the subject of a fairly complex indictment

6  charging you with a number of felonies.  The court has considered

7  some five motions to dismiss fairly recently and in each of your

8  cases made certain decisions, among other things, as to the

9  nature of certain crimes, that they are in fact misdemeanors and

10 not felonies, and otherwise the ruling is the best reference for

11 the decisions the court has made.

12     What I understand now is the government would dismiss all of

13 the remaining charges against you if the court does accept a plea

14 of guilty to the criminal information, which is a separate

15 misdemeanor charge.

16     You have a number of rights.  You're accused in an

17 information and you've got a right to have your case considered

18 by a grand jury.  At this point in time no grand jury has

19 indicted you as to this offense.  If you do agree for the cases

20 against you to proceed pursuant to an information, you would

21 waive any rights that you have with respect to consideration of

22 this charge by a grand jury if appropriate.

23     Now, the constitution and laws give you the right to be

24 tried by a jury, and at a jury trial you would be, as you are

25 now, presumed innocent.  The burden is on the shoulders of the

1　government still to prove you guilty beyond a reasonable doubt.

2　The government may do this by bringing witnesses into this room

3　who would testify from the witness stand, and you or your

4　attorney would have the right to ask those people questions, as

5　you've also got the right to exercise something called subpoena

6　powers to bring people into this room to testify for your

7　defense.  You've got the right, gentlemen, to take the witness

8　stand if you were to choose to do so.  You don't have to.  You

9　have the right, and it's been explained carefully to you a number

10　of times, to remain silent.  Nobody can make you say anything.

11　　　If you do decide to speak, whatever you say may be used

12　against you.  If you decided not to testify, if the case were to

13　proceed before a jury, at the appropriate time or times I will

14　tell the jury no inference of your guilt is allowed to be drawn

15　from your decision to remain silent.

16　　　Now, by pleading guilty, you would waive your right to a

17　trial by jury and all rights associated with a jury trial.  You

18　would waive your right not to incriminate yourself because I am

19　going to ask you questions about what you did in order to make

20　certain that you're guilty as charged, and you may lose very

21　valuable civil rights.

22　　　There are a number of penalties that might apply in your

23　case.  I'll speak about them more particularly, but generally you

24　may be ordered to make restitution.  I believe the plea

25　agreement, however, Mr. Bowler, refers to no restitution being

1    expected.

2                MR. BOWLER:  It does expressly state that, Your Honor.

3                THE COURT:  There is a $25 special assessment given the

4    nature of the crime at issue.  The court may impose a fine if

5    you're found able to pay, and your failure if so found not to

6    pay —— or your failure to pay could subject you to certain

7    further penalties.

8         You may be given a term of supervision upon release from

9    imprisonment and if you were to violate that, that could cause

10   you to go back to prison to serve an additional prison term.

11        You will be sentenced under the Sentencing Reform Act of

12   1984.  I believe the guidelines do apply to the extent that these

13   are Class A misdemeanors.

14        Mr. Wasco, is that your belief as well?

15                MR. WASCO:  Yes, Your Honor.

16                THE COURT:  And the court must determine the advice of

17   the guidelines and consider that advice, including any upward or

18   downward departure before turning to 18 United States Code,

19   Section 3553.  That sets forth a number of factors that the court

20   is required to consider, among them, the nature of the offense or

21   offenses at issue, the defendant's background and history, the

22   need for the sentence to promote respect for the law, to

23   discourage this type of conduct, to protect the public and to

24   provide any needed treatment or education.  The court's

25   requirement is to fashion a sentence that's sufficient, but not

1  greater than necessary.

2     And I took note in the plea agreement, Mr. Bowler, that

3  you're not going to be making any recommendation as to the

4  sentence?

5          MR. BOWLER:  The government has agreed to remain

6  silent.

7          THE COURT:  Okay.  Now, under some circumstances you or

8  the government may have the right to appeal the sentence, but I

9  did take note that there were a number of appeal waivers in this

10 plea agreement, and I'll question you more particularly about

11 your understanding of that agreement in a moment.  I have to look

12 very carefully at it to make sure that it complies with the

13 purposes of sentencing, and I'll discuss that more particularly,

14 and I'll discuss sentencing a little bit more particularly in a

15 moment.

16    Now, I'm assuming, counsel, your clients want to waive this

17 indictment, proceed on this information and go forward along

18 those lines.  Is that correct?

19         MR. BELL:  Yes, Your Honor.

20         MR. SWEENEY:  Yes, Your Honor.

21         THE COURT:  Okay.  Now, gentlemen, if you would stand

22 up, Mr. Jackson and Mr. Mathews, I'll turn first to you

23 Mr. Jackson and ask you, what is your full name?

24         DEFENDANT JACKSON:  My name is Gary Charles Jackson.

25         THE COURT:  And how far did you go in school?

```
1              DEFENDANT JACKSON:  Some college.

2              THE COURT:  All right.  I have demonstrated a

3    familiarity with your employment history as a result of

4    consideration of the discovery issues and the motions that have

5    been pending.  Have you been treated recently by a doctor or a

6    psychiatrist for any kind of problem?

7              DEFENDANT JACKSON:  No, ma'am.  No, Your Honor.

8              THE COURT:  Have you taken any medicine or drunk any

9    alcohol in the last 24 hours?

10             DEFENDANT JACKSON:  No, Your Honor.

11             THE COURT:  All right.  How about you, Mr. Mathews,

12   what's your full name?

13             DEFENDANT MATHEWS, JR.:  William Wheeler Matthews, Jr.

14             THE COURT:  How far did you go in school?

15             DEFENDANT MATHEWS, JR.:  I completed a graduate

16   education.

17             THE COURT:  I have the same familiarity to the extent

18   of your background and history with respect to Blackwater and Xe.

19   I would ask you, have you been treated recently by a doctor or

20   psychiatrist for any kind of problem?

21             DEFENDANT MATHEWS, JR.:  No, Your Honor.

22             THE COURT:  Have you taken any medicine or drunk any

23   alcohol in the last 24 hours?

24             DEFENDANT MATHEWS, JR.:  No, Your Honor.

25             THE COURT:  I'll ask your lawyer, have you had any
```

1  trouble communicating with your client or understanding his
2  remarks to you?
3          MR. SWEENEY:  No, Your Honor.
4          THE COURT:  And I'd ask you, Mr. Bell, or any of the
5  other lawyers standing next to your client, have you had any
6  trouble communicating with Mr. Jackson?
7          MR. BELL:  No, Your Honor.
8          THE COURT:  Mr. Bowler, do you have any reason to doubt
9  the competency of either Mr. Jackson or Mr. Mathews to proceed
10  here?
11          MR. BOWLER:  No, Your Honor.
12          THE COURT:  I have no reason to doubt your competency.
13  I find the record should reflect that you're both capable and
14  competent to enter into this proceeding.  This plea will go
15  forward on that basis.
16      Gentlemen, have you each been provided with a copy of the
17  information?
18      Mr. Jackson, what is your answer to that?
19          DEFENDANT JACKSON:  Yes, Your Honor.
20          THE COURT:  And Mr. Mathews, what's your answer to
21  that?
22          DEFENDANT MATHEWS, JR.:  Yes, Your Honor.
23          THE COURT:  As you both know, it's charged that on or
24  about sometime between 2005 and 2007 in this district, being an
25  employee of a corporate entity which was a licensed federal

firearms manufacturer and dealer with certain defined

responsibilities, including in record keeping, that you failed to

keep accurate records, you failed to maintain them or cause them

to be made and maintained, specifying the actual location where

firearms were stored or kept on the Blackwater and Xe premises,

specifically the place of business shown on the corporate

entities special occupational tax stamp and failed to make and

maintain, or cause to be made and maintained required records

with respect to registration of certain firearms.  Such failure

to maintain records included a number of short-barreled rifles

manufactured by Blackwater and/or Xe and that you aided and

abetted others in so doing, in violation of 18 United States

Code, Sections 922(m), 923(g)(1)(A) and 2 and Title 27 of the

Code of Federal Regulations.

    I haven't read this word-for-word but I have hewed fairly

closely to the information.  Do you want me to go back and

re-read it in its entirety or do you believe that you understand

the nature of the charge you face, Mr. Jackson?

        DEFENDANT JACKSON:  Yes, ma'am, I understand, Your

Honor.

        THE COURT:  Okay.  Mr. Mathews, I'd be happy to re-read

it for you or answer any questions.  I just want to make sure, do

you understand the nature of the charge that you're proposing to

plead guilty to?

        DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

```
 1              THE COURT:  All right.  And you've discussed before

 2   today this proceeding on the information with your attorney;

 3   correct, Mr. Mathews?

 4              DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

 5              THE COURT:  And Mr. Jackson, correct?

 6              DEFENDANT JACKSON:  Yes, Your Honor.

 7              THE COURT:  Now, have you had enough time, Mr. Jackson,

 8   to discuss your case with your many attorneys?

 9              DEFENDANT JACKSON:  Yes, Your Honor.

10              THE COURT:  Mr. Mathews, have you had enough time to

11   discuss your case with your attorney?

12              DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

13              THE COURT:  Are you satisfied with counsel's services

14   to you, Mr. Mathews?

15              DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

16              THE COURT:  And Mr. Jackson, are you satisfied?

17              DEFENDANT JACKSON:  Yes, Your Honor.

18              THE COURT:  All right.  Gentlemen, did you hear my

19   explanation of the rights that you have?  Mr. Jackson, did you?

20              DEFENDANT JACKSON:  Yes, Your Honor.

21              THE COURT:  Any questions about any of them?

22              DEFENDANT JACKSON:  No, Your Honor.

23              THE COURT:  Mr. Mathews, how about you?

24              DEFENDANT MATHEWS, JR.:  I understood them, Your Honor.

25              THE COURT:  Any questions?
```

```
1              DEFENDANT MATHEWS, JR.:  No, Your Honor.
2              THE COURT:  All right.  Finally, again, I turn to you
3    both and say, do you fully understand what you're charged with?
4    Mr. Mathews?
5              DEFENDANT MATHEWS, JR.:  Yes, Your Honor.
6              THE COURT:  And how do you wish to plead?
7              DEFENDANT MATHEWS, JR.:  Guilty.
8              THE COURT:  Mr. Jackson, do you fully understand the
9    charge set forth in the criminal information?
10             DEFENDANT JACKSON:  Yes, Your Honor.
11             THE COURT:  How do you wish to plead?
12             DEFENDANT JACKSON:  Guilty.
13             THE COURT:  Now, I will tell you the penalties that
14   apply are the same in each of your cases.  The maximum term of
15   imprisonment is one year.  The maximum term of supervised release
16   is one year.  The maximum term of imprisonment upon revocation of
17   supervised release is one year.  The maximum fine is a hundred
18   thousand dollars.  I made mention of restitution.  It is not
19   understood to be at issue in this case, however.  I also made
20   mention of a special assessment.  That's a $25 special
21   assessment.
22        Mr. Jackson, do you have any questions about the penalties
23   that I've described?
24             DEFENDANT JACKSON:  No, Your Honor.
25             THE COURT:  Mr. Mathews, do you?
```

1           DEFENDANT MATHEWS, JR.:  No, Your Honor.

2           THE COURT:  Gentlemen, do you understand if you violate

3    a term or condition of supervised release, that could cause you

4    to go back to prison and serve a prison term?  Mr. Mathews?

5           DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

6           THE COURT:  Mr. Jackson?

7           DEFENDANT JACKSON:  Yes, Your Honor.

8           THE COURT:  Now, I'd like to put the cart a little bit

9    before the horse in terms of sentencing.  Mr. Bowler, I have a

10   lot of knowledge of the circumstances underlying the offense

11   conduct here again by virtue of the length of this litigation,

12   the discovery issues that have been raised, the motions that have

13   been filed.  I know about the defendants' professional background

14   and history as relates to the corporation, though certainly that

15   doesn't foreclose further argument in this proceeding.

16       I know neither one of you presents a scorable criminal

17   history as reported to me by the probation office.  I have some

18   other information in the form of a report that provides the court

19   some information about the financial condition of each defendant,

20   physical condition, mental condition, substance abuse issues, if

21   any.

22       Is this a case where I need a presentence report to go

23   forward in sentencing?

24           MR. BOWLER:  Your Honor, the government had anticipated

25   the court would want one, but the government will not oppose or

1   object if the court feels content that it has enough information
2   to proceed today and wishes to do so.

3          THE COURT:  Well, do you think I do?

4          MR. BOWLER:  I suspect given the history of this case
5   you do, Your Honor.

6          THE COURT:  Okay.  Mr. Bell, will Mr. Jackson, if I do
7   accept his guilty plea, be prepared to go forward in sentencing
8   today?

9          MR. BELL:  I believe so, Your Honor, unless there is
10  some dispute about the sentencing guideline range, but in general
11  we'd be willing to go forward with that.

12         THE COURT:  We can take it as it comes.  And for you,
13  sir?

14         MR. SWEENEY:  Your Honor, we would be willing to waive
15  the PSR as well.  As Mr. Bell indicated, we thought we were going
16  to start at 2:00 o'clock, and maybe if we had five or ten minutes
17  to confer, that would be appreciated.

18         MR. BOWLER:  Your Honor, I relayed that.  It's my
19  recollection of what the court's instructions were, but if I'm
20  mistaken, I apologize.

21         THE COURT:  Well, it was always my intention to go
22  forward at 1:30, but certainly I think a break is an appropriate
23  thing and it might be helpful to the government as well.

24     Now, I need to explain to you a little bit about the
25  sentencing process and I must determine what the advice is of the

sentencing guidelines. We'll hear a little bit more from the government at the appropriate time as to your proffer, what you would say you would be prepared to prove, and perhaps we can hear from Mr. Wasco at the appropriate time in development of the probation office's understanding. Obviously, you cannot be sentenced to more than 12 months by statute.

All right. Now, Mr. Jackson, do you have any questions about the sentencing process at this point? And I'll certainly give you the chance as this case goes forward at hearing today to raise some, but now do you have any questions?

DEFENDANT JACKSON: No, Your Honor.

THE COURT: Mr. Mathews?

DEFENDANT MATHEWS, JR.: No, Your Honor.

THE COURT: So there is a plea agreement, and I have again an unsigned draft — or not draft but — Ms. Tripp, tell me what your record reflects now in terms of a signed document.

THE CLERK: I do not have those in my possession yet, Judge.

THE COURT: So who has the plea agreements?

MR. BOWLER: May I approach, Your Honor?

THE COURT: Certainly.

MR. BOWLER: Your Honor, I have the signed versions of Mr. Jackson's document. Mr. Sweeney, our anticipation was to sign them today, and perhaps I set off the time schedule by telling them to be here at 1:30 to do that.

```
1          THE COURT:  Does he want to sign them now?
2   Mr. Friedrich's signature line is not completed.  I don't know if
3   that raises any issue because counsel for defendant, Mr. Bell,
4   has signed the plea agreement.
5          MR. BELL:  And Mr. Friedrich is unavailable to be here
6   today, Your Honor.
7          THE COURT:  Do you want to sign for him?
8          MR. BELL:  If the court wants me to, I will.
9          THE COURT:  I don't care.
10         MR. BELL:  Any deficiency in his signature is waived,
11  Your Honor.
12         THE COURT:  Okay.  Did you need more time, Mr. Sweeney?
13         MR. SWEENEY:  I'd like it, Your Honor.
14         THE COURT:  Because you've not had a chance to sit down
15  and go over those with —
16         MR. SWEENEY:  Well, again, I think we'll be ready to go
17  in ten minutes, Your Honor.
18         MR. BOWLER:  What happened is, my secretary and my
19  paralegal caught some format changes and they are just trying to
20  assure themselves there was no substantive changes.
21         THE COURT:  All right.  Mr. Bell, come forward and take
22  this.  I don't know if you want the same time.  Gentlemen, we'll
23  call a halt in this for — how much time do you want,
24  Mr. Sweeney?
25         MR. SWEENEY:  Ten minutes would be fine, Your Honor.
```

```
 1              THE COURT:  Why don't we do this.  Why don't we take a
 2    20-minute break and you can think a little bit more about the
 3    sentencing process with benefit of Mr. Wasco.  Do you have
 4    anything you think would be helpful to note in determining the
 5    advice of the guidelines in this case?
 6              MR. WASCO:  Your Honor, I would like to discuss what I
 7    believe the guideline calculations would be with counsel.
 8              THE COURT:  Okay.  That's another reason to build in a
 9    generous -- how much time do you want?
10              MR. WASCO:  I think 15, 20 minutes, Your Honor.
11              THE COURT:  Let's take a full 30-minute recess and
12    start back at 2:20.
13                   (Whereupon, a recess was taken.)
14    (Brian Whisler, Pat Woodard and Eric Goulian have joined the
15    proceedings.)
16              THE COURT:  So I've been presented with a signed plea
17    agreement, Mr. Sweeney, on behalf of your client.
18              MR. SWEENEY:  Yes, ma'am.
19              THE COURT:  And does the clerk have the one I sent back
20    to Mr. Bell for Mr. Jackson?
21              MR. BELL:  No, I've still got it, Your Honor.
22              THE COURT:  All right.  Mr. Sweeney, the clerk has
23    kindly brought to my attention the thought that perhaps we need
24    to clarify how many "t's" are in Mr. Mathews' surname.
25              MR. SWEENEY:  Single "t," Your Honor.
```

```
 1              THE COURT:  Single "t."  All right.  So you would wish
 2    to note that on the plea agreement.  I think the judgment,
 3    though, will be framed from the information and that's — is that
 4    correct, the criminal information has just one "t"?
 5              MR. SWEENEY:  Yes.
 6              THE COURT:  Okay.  We left in these proceedings to give
 7    the defendants an opportunity to meet with the probation officer
 8    and discuss more particularly the advice of the guidelines,
 9    together with you, Mr. Bowler, and I assume, Mr. Goulian, you
10    were there as well?
11              MR. GOULIAN:  Yes, Your Honor.
12              THE COURT:  Also, Mr. Sweeney, you wanted more time to
13    read the plea agreement.  Have you had enough time now to review
14    it to discuss its contents with Mr. Mathews?
15              MR. SWEENEY:  Yes, Your Honor, thank you.
16              THE COURT:  You've had enough time, Mr. Bell, to talk
17    to your client about this plea agreement?
18              MR. BELL:  Yes, Your Honor.
19              THE COURT:  All right.  Now, Mr. Mathews and
20    Mr. Jackson, before we broke for a moment, I had confirmed a lot
21    of rights that you have.  I had discussed the sentencing process.
22    You had confirmed you're satisfied with your attorney's
23    representation, that you understood the charges that you face,
24    the possible punishment, and each of you tendered to the court a
25    guilty plea as to the criminal information.
```

1          Now I turn your attention to the plea agreement and I would

2     ask you, Mr. Jackson, have you had enough time to review it and

3     to talk with Mr. Bell and your other attorneys to be ready for

4     sentencing today?

5          DEFENDANT JACKSON:  Yes, Your Honor.

6          THE COURT:  And to go forward, more particularly, on it

7     because first I have to decide if this accomplishes the purposes

8     of sentencing.

9          Mr. Mathews, have you had enough time to review the plea

10    agreement?

11         DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

12         THE COURT:  There were a lot of complicated words and

13    phrases in it.  Did you understand all of the words and phrases

14    that make up this plea agreement before you signed it?

15         DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

16         THE COURT:  Among other things, there are waivers in it

17    of your rights to appeal.  Do you understand these waivers when

18    challenged by other defendants generally have been found

19    enforceable?

20         DEFENDANT MATHEWS, JR.:  I do, Your Honor.

21         THE COURT:  Did anybody make any other promises to you

22    other than what's in this plea agreement?  And I note

23    Mr. Bowler's oral tender to the courtroom that this is a

24    consolidated offer that the government has made and it is

25    conditioned on both defendants accepting the terms offered.  And

1   on that basis you would then turn ultimately and dismiss Ronald
2   Slezak from this case?
3           MR. BOWLER:  That's correct, Your Honor.
4           THE COURT:  So I don't believe the particulars of that
5   are memorialized in the plea agreement, but they are noted on the
6   record.  Are there any other promises or agreements or
7   understandings not heretofore considered either today in court or
8   in the form of this plea agreement that have caused you to enter
9   into this plea?
10          DEFENDANT MATHEWS, JR.:  No, Your Honor.
11          THE COURT:  Have you done this today knowingly,
12  voluntarily, understanding the consequences of your plea?
13          DEFENDANT MATHEWS, JR.:  Yes, Your Honor.
14          THE COURT:  So no one has threatened you, forced you or
15  coerced you into coming into the courtroom today and signing this
16  agreement?
17          DEFENDANT MATHEWS, JR.:  No, Your Honor.
18          THE COURT:  All right.  You can be seated, Mr. Mathews.
19      Mr. Jackson, I think you can anticipate the questions that
20  I'll be asking you.  Did you have enough time again to review
21  this with Mr. Bell and the other attorneys before signing it?
22          DEFENDANT JACKSON:  Yes, Your Honor.
23          THE COURT:  There are a lot of complicated words and
24  phrases in this plea agreement, including but not limited to ones
25  that refer to appellate waivers.  Did you understand all of the

1  words and phrases before you signed this plea agreement?

2          DEFENDANT JACKSON:  Yes, Your Honor.

3          THE COURT:  Are there any other promises that have been

4  made to you in an effort to cause you to come to court today and

5  at this stage of the litigation very suddenly decide that you

6  wish to plead guilty?

7          DEFENDANT JACKSON:  No, Your Honor.

8          THE COURT:  Has anybody forced you or threatened you

9  into doing this?

10         DEFENDANT JACKSON:  No, Your Honor.

11         THE COURT:  Have you done this knowingly and

12  voluntarily, fully understanding the consequences of a guilty

13  plea?

14         DEFENDANT JACKSON:  I have, Your Honor.

15         THE COURT: All right.  You can be seated.

16    Now, you can withdraw your plea of guilty before I accept

17  it, gentlemen, for any reason or for no reason at all, but once I

18  finally — if I do accept it, you can't withdraw it.  Do each of

19  you understand that?

20         DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

21         DEFENDANT JACKSON:  Yes, Your Honor.

22         THE COURT:  All right.  I tell you now, parole has been

23  abolished.  Defendants don't get out early on parole.  Do you

24  have any questions about that, Mr. Jackson?

25         DEFENDANT JACKSON:  No, Your Honor.

```
 1            THE COURT:  Mr. Mathews?
 2            DEFENDANT MATHEWS, JR.:  No, Your Honor.
 3            THE COURT:  All right.  Well, you can still withdraw
 4   your plea.  The burden is still on the shoulders of the
 5   government to prove you guilty beyond a reasonable doubt.  You
 6   still have the right to a trial, to assistance of counsel at
 7   every turn, to persist in your not guilty plea.  You don't have
 8   to prove anything.  The burden is entirely shouldered by the
 9   government to prove the defendant guilty beyond a reasonable
10   doubt.  But if I accept your guilty plea, there is not going to
11   be a trial of any kind.  Do you understand what I just said,
12   Mr. Jackson?
13            DEFENDANT JACKSON:  Yes, Your Honor, I do.
14            THE COURT:  Do you understand what I just said,
15   Mr. Mathews?
16            DEFENDANT MATHEWS, JR.:  Yes, Your Honor.
17            THE COURT:  Have you been truthful, gentlemen, in all
18   of your answers to all of the court's questions?
19            DEFENDANT JACKSON:  Yes, Your Honor.
20            DEFENDANT MATHEWS, JR.:  Yes, Your Honor.
21            THE COURT:  Is there any other information or advice
22   that you want?  We did break for a fairly lengthy period, longer
23   than 30 minutes.  If you want the opportunity to break again, if
24   you have any questions of your attorneys, now is the time to tell
25   me.
```

1          DEFENDANT JACKSON:  No, Your Honor.

2          DEFENDANT MATHEWS, JR.:  No, Your Honor.

3          THE COURT:  Now, I turn back to the plea agreement to

4    note on the record, again there are three elements the government

5    would be required to prove beyond a reasonable doubt in order to

6    sustain a conviction upon the charged offense of failing to

7    maintain records relating to firearms.

8          First, that in or about 2005 through 2007 in this district,

9    that you did knowingly fail to adequately supervise others to

10   make or maintain, or cause others to do so, records required by

11   law that were, thirdly, relative to firearms, specifically to the

12   short-barreled firearms.

13         Who will be making the proffer on behalf of the government?

14         MR. BOWLER:  I will.

15         THE COURT:  All right.  What would the government be

16   prepared to prove if the case went to trial against Mr. Mathews,

17   Mr. Jackson?

18         MR. BOWLER:  Your Honor, the government is aware the

19   court is immersed in this case probably more than most and

20   probably knows much of what I will say, but for the purposes of

21   the record, we would anticipate being able to prove --

22         THE COURT:  Why don't you pull that microphone just a

23   little closer so we can all hear you.

24         MR. BOWLER:  The government would anticipate proving,

25   being able to prove, Your Honor, that it grows out of the two

defendants' employment by a corporate entity formally known as
Blackwater.  It's had various names over the ensuing years, Xe,
and it has a new name now.  Mr. Jackson was the president of that
corporation during the charge time frame, 2005 to 2007.  Mr.
Mathews was the executive vice-president.

The business of Blackwater during that time frame, which
I'll bring up just briefly for the factual background for the
proof in the charges, Your Honor, is that they were in the
business of providing training.  They were located — training
both in — principally in firearms and also in other security and
defense-related tactics and skills.  They have a large facility
in Moyock, North Carolina, which is in the Eastern District of
North Carolina.

In addition to Mr. Mathews and Mr. Jackson, there were
several other officers, as have come to the court's attention in
the course of the case, but perhaps worth noting is that they
were a discrete group.  It was — especially when it was growing,
the company, prior to its becoming as large as eventually it did.
It was a very discrete group of officers located principally in
Moyock, offices principally down the hall from one another for
the most part.

The ability to lawfully possess and use firearms in their
training and what grew into security missions overseas and became
large multi-million dollar contracts, integral to that business
model was the ability to lawfully purchase and dispose of and

employ firearms.  They became as a result of that, and were
throughout the charge time frame, what are referred to as FFLs,
federally licensed firearms dealers.

The law — and there are assorted provisions that apply and
filter through the charged sections, the sections listed in the
criminal information — requires that all FFLs make and maintain
extensive documentation as to their handling of firearms.  Now,
"handling," by that I mean their acquisition of them and their
disposition of them.  In fact, one of the chief records that they
are required to make is an acquisition and disposition book
which, if properly kept, shows all the firearms that have come
into their possession and where they went.  The law provides that
the Bureau of Alcohol, Tobacco and Firearms has a lawful right to
go into their facilities at virtually any time and inspect those
documents.

I mention all that, Your Honor, because it was integral to
the business model that was being conducted there.  And the two
defendants were senior, in the case of Mr. Jackson, president of
that corporate entity.  Mr. Mathews held the title of executive
vice-president.  They were not the ones actually who were
supposed to be filling out this acquisition and disposition, but
they were responsible for the supervision of that by other lower
employees and they were responsible for the corporation filling
that vital mission, and it was a mission, as we keep trying to
hit, that was core to their business operation.

 1          The weapons at issue were also, at least at some point,
 2     stored in an armory maintained properly by Blackwater at the
 3     Moyock facility not far from the offices of the officers.  During
 4     the charged time frame — and it occurred over a period of time,
 5     not all of it within it; some of it starts before —— Blackwater
 6     lawfully began manufacturing short-barreled rifles.
 7          Essentially, just for the court's understanding, the process
 8     was purchasing shorter barrels and taking off the normal barrels
 9     off M4s, which were at the time semi-automatic Bushmaster rifles,
10     and replacing them with short barrels.  They went through that
11     process as to a substantial number of SBRs at the Moyock facility
12     and failed to keep or cause to be kept the records which should
13     have been created relative to that, were required by law.  We
14     think that both defendants are responsible for that failure to
15     supervise and cause those records to be maintained.
16          THE COURT:  And the government's information recites an
17     issue as to location as well, and that's folded into your proffer
18     right now as part of the record keeping?
19          MR. BOWLER:  Yes, Your Honor.
20          THE COURT:  Okay.  And the other aspect of the record
21     keeping is related to the numbers of the SBRs or ——
22          MR. BOWLER:  This acquisition and disposition book, the
23     government believes and the defendants are now not contesting,
24     should have covered the creation, the existence of these weapons
25     after they were manufactured there and did not.

```
 1              THE COURT:  So a complete failure to refer to them?
 2              MR. BOWLER:  In the record keeping.  Now, in fairness
 3    to the defendants, Your Honor, I want to be clear.  They were
 4    producing these weapons for use on contracts providing security
 5    for government forces and enterprises overseas.  To the
 6    government's knowledge, they had no illegal intent in the use or
 7    sale of the weapons, and they were subsequently used in
 8    protective details that were contracts with the United States
 9    government, and so they were employed with the knowledge of the
10    United States government.  The issue arises from the record
11    keeping relative to those.
12              THE COURT:  Well, should the records have reflected
13    where the weapons were overseas?
14              MR. BOWLER:  We think they should have reflected their
15    creation, that they were possessing them at least for a period of
16    time at the armory there at Moyock, and then when they were
17    shipped or transported should have -- and turned over, if that
18    was their theory to the government, it should have reflected
19    that.
20              THE COURT:  And how many weapons do you believe were at
21    issue?
22              MR. BOWLER:  The evidence included the purchase by
23    Blackwater of in excess of 200 short barrels.  Some of those may
24    have been purchased as replacements for defective barrels,
25    barrels that became worn, but our information would be that some
```

1  approximately 200 were manufactured by them.  Now, some portion

2  of those may have been manufactured overseas, but a substantial,

3  we believe, my understanding is the bulk of those were

4  manufactured at Moyock.

5        THE COURT:  Okay.  All right.  Thank you.  Well,

6  Mr. Mathews, are you guilty of the offense charged in the

7  criminal information alleging that on or about or between 2005

8  and 2007 in this district and elsewhere, that you, being an

9  employee of a licensed federal firearms manufacturing dealer with

10  the responsibilities as set forth therein, did knowingly fail to

11  maintain or make these appropriate and required records?

12        DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

13        THE COURT:  Did you commit the crime charged?

14        DEFENDANT MATHEWS, JR.:  Yes, Your Honor.

15        THE COURT:  And, Mr. Jackson, I ask you the same

16  question.

17        DEFENDANT JACKSON:  Yes, Your Honor.

18        THE COURT:  Are you guilty of the crime charged in the

19  criminal information?

20        DEFENDANT JACKSON:  Yes, Your Honor.

21        THE COURT:  All right.  I'm satisfied with the

22  responses given here today by both of you.  You understand what

23  you're pleading to.  You understand the consequences of your

24  guilty plea.  You've come into the courtroom today knowingly,

25  voluntarily.  Nobody has promised or threatened you, and

1    moreover, there is a factual basis to support your plea of guilty

2    to the misdemeanor crime charged.  So for these reasons, I'll

3    accept your guilty plea and enter judgment on it.  And the

4    government is prepared to proceed now, as the defendants are, to

5    sentencing?

6            MR. BELL:  We are, Your Honor, on behalf of

7    Mr. Jackson.

8            MR. SWEENEY:  Yes, Your Honor.

9            MR. BOWLER:  Yes, Your Honor.

10           THE COURT:  Okay.  Did anyone need a further break?

11           MR. BELL:  No, Your Honor.

12           THE COURT:  Well, I accept the plea agreements.  I

13   believe they accomplish in this case under the circumstances

14   presented the purposes of sentencing, and the government stands

15   ready to dismiss the indictment returned against these

16   defendants.

17       And going forward, you've had the opportunity to talk with

18   Mr. Wasco and to review with the probation officer the United

19   States guidelines, and I must make findings as to what the advice

20   of the guidelines is, but I'm not bound by that advice.  I need

21   not assume it even reasonable.  The court goes forward in

22   sentencing after considering the advice and reflects on the

23   factors in 18 United States Code, Section 3553.

24       First, turning everyone's attention to the advice of the

25   guidelines, it would appear that we should all look at 2K2.1 and

1    I believe turn our attention to Section 8 of 2K2.1(a) and reflect

2    on a six-point enhancement.  Also, with regard for comparison

3    purposes to 2K1.6, I do think an 18-level enhancement if the

4    offense involved a firearm under the unique circumstances here

5    would not be appropriate.  I think a six-point enhancement is.

6         Does the government wish to be heard on that?

7              MR. BOWLER:  No, Your Honor, not under --

8              THE COURT:  Not enhancement.

9              MR. BOWLER:  Calculation.

10             THE COURT:  Yes.

11             MR. BOWLER:  No.  Under all the -- as the court knows,

12   there are layers of facts and nuance and gray areas in this case

13   in the evidence and developments.  Under these circumstances

14   we're not opposed to that calculation, and also tied to the

15   circumstances of this plea, Your Honor.

16             THE COURT:  Well, the court has considered much with

17   respect to its duties under CIPA, and certainly I am informed by

18   that aspect of this proceeding and I think, Mr. Bowler, you very

19   gently touched on it to the extent of your comments as to where

20   these weapons went and the uses that were made of them, so I do

21   think that informs the advice of the guidelines as it further

22   distinguishes when an 18-level, base offense level would be

23   appropriate.

24        Do you want to be heard on that, Mr. Bell?

25             MR. BELL:  No, Your Honor.  We would agree with the

```
 1   base offense level of six.
 2             THE COURT:  And Mr. Sweeney?
 3             MR. SWEENEY:  We agree with six as well, Your Honor.
 4             THE COURT:  And I'm not seeing any enhancements.  Are
 5   you, Mr. Wasco?
 6             MR. WASCO:  No, Your Honor, I do not believe there are
 7   any specific offense characteristic enhancements.
 8             THE COURT:  And the defendants have accepted
 9   responsibility and, therefore, would appear to be entitled to a
10   two-point reduction.  Do you agree?
11             MR. BOWLER:  Yes, Your Honor.
12             THE COURT:  And so that would, with respect to a
13   criminal history of one and a base offense level of four, cause
14   the court to determine the advice of the guidelines with a
15   sentence of zero to six months, and the defendants are in Zone A.
16        Mr. Bell, do you want to be heard on that?
17             MR. BELL:  Yes, Your Honor, thank you.  I would by way
18   of argument supplement the factual basis of the government just
19   to this extent, that the lawfully manufactured SBRs, that the
20   record keeping violations of the entity and those subordinate to
21   Mr. Jackson was made that much more difficult because of some of
22   the facts that have been alluded to here.  It was almost a catch
23   22 because of the uses of those weapons and for whom you buy
24   them, at whose request and that sort of thing, so while trying to
25   maintain records in a way that the ATF would have liked to have
```

had them maintained, while maintaining the secrecies required under classified contracts, made it very difficult for the subordinates of Mr. Jackson and Mr. Mathews, and I'd ask the court to take that as additional facts into consideration for sentencing.

I know the court knows a lot about this case and Mr. Jackson.  I don't want to belabor.  I would ask the court to take into account a couple of things, though, particularly Mr. Jackson's 23-year career as a U.S. Navy SEAL, and we've all come to know what that involves in sacrifice to self, family and all for country.  I've come to know a few SEALs through this case and they are all just staggeringly impressive and, of course, we owe them all a great debt of gratitude for what they've done, Mr. Jackson as much as any.

He continued to serve his country at Blackwater.  They've written books on how the anti-terrorism war and the actions in Afghanistan and Iraq could not have happened as successfully as they did without Blackwater.  The government believed that, because they were using them extensively for all manner of projects, both classified and unclassified.  And Blackwater particularly was, during the time Mr. Jackson was president, engaged to provide protective services to many senior U.S. government officials, and in contradiction to some other protection contracts, Blackwater never lost a single protectee that they were assigned to protect on the order of the U.S.

government.  I think that speaks a great deal for Mr. Jackson's leadership of an invaluable service to the U.S. government.

I would also ask the court to take into consideration that Mr. Jackson has been under indictment for originally 13 felony counts now for almost three years and under investigation for more years before that.  I've known Mr. Jackson now about five or six years while we've wrested through all of this, and that's not been an easy time for him.  From the initial appearance forward, he's contested his guilt, declared his innocence on what he was initially charged for.  He's been laboring under that indictment now, as I said, for almost three years now, and that's a punishment in and of itself.

With the guideline range being zero to six months, we would ask the court to sentence within that range, and probation is entirely appropriate here.  I don't think he even needs supervision.  He's been under unsupervised release for the last three years, no offenses, no reason to think that this great American would be any bother to the court again.

THE COURT:  All right.  Thank you.  Mr. Jackson, is there anything you would like to add on your behalf?

DEFENDANT JACKSON:  Your Honor, I appreciate all the work that has been done on my behalf and I still appreciate the government's work on their behalf and still believe this is the best justice system in the world.  Thank you.

THE COURT:  All right.  Thank you.  And Mr. Sweeney for

1    Mr. Mathews?

2         MR. SWEENEY:  Thank you, Your Honor.  First of all I'd

3    like to echo and then add to some of the comments of Mr. Bell.

4    Just with respect to the factual basis, I'd also add in addition

5    to his points that as you well know throughout this case, the

6    numbers of those weapons have been in dispute as well, so -- and

7    Mr. Bowler kind of alluded to that somewhat, so I hope you take

8    that into account.

9         I'd also like to talk about Mr. Mathews on three levels.

10   Again, you're well steeped in this case, but as a person, just to

11   let you know that, one, he's a father of three children that

12   depend on him.  They are young children, in their teens — or

13   preteen years.  He's got a wife as well, and he's also taking

14   care of his father who is ailing and, in fact, that's been part

15   of the last three years that Mr. Bell referred to that has been

16   very hard on Mr. Mathews.  Yet he has sticked to all of the

17   conditions of his pretrial release, as well as taking care of his

18   father and his family.

19        As a person, he's always been about patriotism in this

20   country, Your Honor.  As he mentioned to you, he had a graduate

21   degree which was actually in law, but instead of going into the

22   practice of law, he decided to become a Navy SEAL, spent five

23   years on active duty as a SEAL and then went into the reserves.

24        After 9-11, I guess he felt the same thing that a lot of us

25   felt, which was rage and such.  He actually left his law office

at that time.  He had left the Navy, was in the reserve, left his
law office at that time, went down to the treadmill in his suit
and tie and his good shoes and got on the treadmill and ran the
rest of that day until his feet were bloody, getting ready to go
back and take the fight to the enemy.

So when he was asked to then come -- leave that profession
and go to again protecting his country, in this case with
Blackwater, he jumped at that choice, Your Honor.  And as
Mr. Bell mentioned, they were all about not just training local
and federal officials in the practice of law and with respect to
law enforcement, but also to protecting our nation's diplomats,
and to include the ambassador, and as Mr. Bell said, they didn't
lose a single person, yet at the same time they had to bear the
loss of their own.  In addition, during the time, the supervisory
time that we talked about, Katrina happened and Mr. Mathews was
in charge of that, and so he went to New Orleans to lead security
forces there, again protecting our country and our way of life.

During these last three years -- one other thing, Your
Honor.  In order to take that job at Blackwater, he had to give
up his job as a Navy SEAL in the reserves, so a total of 13 years
there, but then he moved on to serving the country in a different
fashion.

With respect to these last three years, in addition to
abiding by the conditions of release, he's been very active.
That's the type of guy he is.  As you well know, Your Honor, he's

taken two trips to Haiti to help rebuild that country.  Just
recently he did a kayak trip all the way down to the east coast
to help a charity, and he's active in his church, and so we think
that certainly the last three years have been plenty of
punishment and that you would take that into account, Your Honor.

            THE COURT:  All right.  Thank you.  Mr. Mathews, is
there anything you would like to say?

            DEFENDANT MATHEWS, JR.:  Your Honor, I know Mr. Jackson
and I would have done anything to defend our country.  We did our
best.  We apologize that mistakes were made, but they were
unintentional, and I regret any mistakes that were made, but they
were made with the best of intentions.

            THE COURT:  Did the government, recognizing aspects of
the plea agreement, did the government wish to be heard further
at this time?

            MR. BOWLER:  No.  Thank you, Your Honor.

            THE COURT:  Well, I've considered the advice of the
guidelines specifically and generally in this case and the
factors set forth in 18 United States Code, Section 3553,
including the need for the sentence to reflect the circumstances
of the offense and the defendant's history and characteristics,
also the need to discourage this type of offense, and there is an
intersect with the case involving the corporation that plays a
part in this, too.  There is a need to promote respect for the
law.

All things being considered, I believe a sentence of
probation accomplishes the purposes of sentencing to the extent
that the court will incorporate a four-month term as to each
defendant of house arrest during this period of three years of
probation, during which the defendants' movements will be
required to be preapproved by the probation office.  Certainly
for purposes of charity, religious worship, work, health, legal
issues, family obligations, those movements are to be encouraged
to be continued to be maintained, but this contact with the
probation office with respect to schedules I think is a punitive
one in this case and sufficiently punitive within the context of
a three-year term of probation during which the defendants will
not break any law, federal, state or local and will comply with
the court's standard conditions.  There is no need for drug
testing in this case.

I do believe there is a need for a fine and I do believe
based on the showing and the information I have that each of you
can pay a fine of $5,000, and I do require that during the term
of probation, and the probation officer —— would you wish to make
a recommendation as to any schedule for that?

MR. WASCO:  I'm sorry, schedule as to?

THE COURT:  Fine.  The fine is due immediately.

MR. WASCO:  If they are not able to pay immediately,
our office during their period of probation will work with them
to establish a schedule.

```
 1          THE COURT:  All right.  I'll leave the probation office
 2   that amount of discretion.  From the probation office, any
 3   further recommendations relative to sentencing law?
 4          MR. WASCO:  Your Honor, just first a special
 5   assessment.
 6          THE COURT:  Twenty-five dollars in each case.
 7          MR. WASCO:  And, Your Honor, just to complete the
 8   record for the fines, the guideline range of zero to six months,
 9   up to three years probation, five years by statute, the guideline
10   fine range is 250 to $5,000.  Thank you, Your Honor.
11          THE COURT:  Thank you very much.  On behalf of
12   Mr. Jackson, are there any matters that haven't been already
13   considered that you wish to note for the record or raise an
14   objection as to the sentence?
15          MR. BELL:  No, Your Honor.
16          THE COURT:  And on behalf of Mr. Mathews with respect
17   to him?
18          MR. SWEENEY:  No, Your Honor.  Thank you.
19          THE COURT:  Thank you, Mr. Sweeney.  And Mr. Bowler,
20   anything for the government?
21          MR. BOWLER:  No.  Thank you, Your Honor.
22          THE COURT:  And the government now dismisses the
23   indictment against these defendants and would wish to be heard on
24   the motion, and I believe Mr. Slezak's attorney is here.
25          MR. WHISLER:  Correct, Your Honor.
```

```
 1              THE COURT:  And Mr. Slezak as well?
 2              MR. WOODARD:  He is not.  We'd ask that you waive his
 3      appearance.
 4              THE COURT:  All right.  You may come forward.
 5              MR. WOODARD:  Thank you, Your Honor, Pat Woodard for
 6      Mr. Slezak.
 7              MR. WHISLER:  Brian Whisler, Your Honor.
 8              THE COURT:  All right.  Thank you, gentlemen.
 9              MR. BOWLER:  Your Honor, with the court's permission I
10      have a written, signed motion to dismiss and a proposed dismissal
11      order.
12              THE COURT:  All right.  And the court has heard briefly
13      concerning the basis for this motion to dismiss.  Does the
14      defendant wish to be heard further?
15              MR. WOODARD:  No objection, Your Honor.
16              THE COURT:  All right.  This motion is allowed.
17              MR. WHISLER:  Thank you, Your Honor.
18              THE COURT:  The court has signed the proposed dismissal
19      order and I believe this fully and finally takes care of this
20      case.  Are there any matters that haven't been considered that
21      bear upon these defendants or any issue appropriate to being
22      considered in this forum?
23              MR. BOWLER:  Not relative to these defendants, Your
24      Honor.
25              THE COURT:  Okay.
```

```
 1          MR. SWEENEY:  No, Your Honor.

 2          MR. BELL:  No, Your Honor.

 3          THE COURT:  We'll stand in recess.

 4                      (Proceedings ended.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                        CERTIFICATE

2

3

4

5

6

7

8          I, Denae L. Hovland, Official Court Reporter, do hereby

9    certify that the foregoing transcript is true and correct.

10

11                                /S/Denae L. Hovland
                                 _____
12                               Denae L. Hovland

13

14

15

16

17

18

19

20

21

22

23

24

25
```